UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DENIA ELIZABETH ESPINOZA DUBON and ADANELIA MEJIA de FLORES, | JURY TRIAL DEMANDED |
| *Plaintiffs*, | |
| v. | |
| RELIABLE ASSETS, INC. d/b/a Reliable Cleaning and Flooring Services a Virginia corporation, | Civ. No: 1:16-cv-1172-AJT-MSN |
| GHULAM NABI, and MAGDA AGUIRRE, | |
| *Defendants* | |

# FIRST AMENDED COMPLAINT

## Preliminary Statement

1. Plaintiffs Denia Elizabeth Espinoza Dubon and Adanelia Mejia de Flores bring this suit against their former employers: Reliable Assets, Inc., doing business as Reliable Cleaning and Flooring Services, and certain of its directors, officers, and employees.

2. Plaintiffs' claims arise from Defendants' failure to pay overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (FLSA), and from Reliable Assets Inc.'s breach of contract under Virginia common law.

1

3. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question). The court has subject-matter jurisdiction over the state-law breach-of-contract claims because they are so closely related to the federal-law claims as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

4. The Court has personal jurisdiction over Defendants because Reliable Assets, Inc. is a Virginia corporation; Defendants regularly directed, controlled, and coordinated the corporation's activities from its office in Virginia; and much of the work at issue was performed in Virginia.

5. Venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred there. *See* 28 U.S.C. § 1391(b)(2).

**Parties**

6. Plaintiffs Denia Elizabeth Espinoza Dubon ("Denia Espinoza") and Adanelia Mejia de Flores ("Adanelia Mejia") are adult residents of Fairfax County, Virginia.

7. Defendant Reliable Assets, Inc. ("Reliable Assets") is a Virginia corporation. It sometimes does business under the name "Reliable Cleaning and Flooring Services." The company's principal office and registered agent's office are located at 12001 Heather Down Dr., Herndon, VA 20170.

8. Defendant Ghulam Nabi is an officer of Reliable Assets. Upon information and belief, he is a resident of Loudoun County.

9. Defendant Magda Aguirre was a manager with Reliable Assets during Plaintiffs' employment. Upon information and belief, during Plaintiffs' employment, Ms. Aguirre was a

resident of Fairfax County. Upon information and belief, Defendant Aguirre currently resides in Maryland.

## FACTS

### Reliable Assets, Inc.

10. Reliable Assets maintains an office at its registered address in Herndon, Virginia.

11. The company provides crews of cleaners and laborers to work on newly-constructed buildings and homes in Virginia and Maryland to prepare them for sale or move-in.

12. Upon information and belief, the gross annual business volume of Reliable Assets exceeded $500,000 at all relevant times.

13. Upon information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

### Plaintiffs' Work Generally

14. Plaintiffs worked for Reliable Assets as cleaners, cleaning newly-constructed buildings and homes in Virginia and Maryland to prepare them for sale or move-in.

15. Plaintiff Denia Espinoza worked for Reliable Assets from around March 2007 to around February 2016. She was hired at a rate of $9.00 per hour. Around 2010, she asked Defendant Nabi for a raise, and he agreed to increase her pay to $10.00 per hour. Plaintiff Espinoza worked primarily in Northern Virginia, with occasional jobs in Maryland.

16. Plaintiff Adanelia Mejia first worked for Reliable Assets from around 2006 to around 2008 or 2009, when she left because there was not enough work. She returned to the company around a year later, and then worked until around April 2016. She was rehired at a rate of

$8.50 per hour. Around 2012, Defendant Nabi raised her wages by fifty cents, to $9.00 per hour. Plaintiff Mejia worked primarily in Maryland, with occasional jobs in Northern Virginia.

17. Plaintiffs both worked as part of cleaning crews. The cleaning crews consisted of five people each: four cleaners and one crew leader. During Plaintiffs' employment, Reliable Assets employed between two and four such crews.

18. Defendant Aguirre assigned Plaintiffs to their cleaning crews. Plaintiff Espinoza's crew leader was a man named "Saul." Plaintiff Mejia's crew leader was a woman named "Deisy." Plaintiffs do not know their crew leaders' last names with certainty.

19. Upon information and belief, Defendants Nabi and Aguirre controlled the day-to-day operations of Defendant Reliable Assets. The crew leaders reported to Defendant Aguirre, who, on information and belief, in turn reported to defendant Nabi.

20. Reliable Assets kept at least two work vans at its Herndon office. The crew leaders would pick up their crew members from their houses in the vans each morning and drop them off again at night.

21. Reliable Assets provided Plaintiffs with their cleaning supplies, such as cleaning chemicals, paper towels, and rags. Defendant Aguirre typically bought the cleaning supplies using Defendant Nabi's credit card. Plaintiffs would sometimes go to the Herndon office to pick up their supplies; other times, their crew leader would just bring the supplies along in the van.

22. Defendant Aguirre determined where Plaintiffs would perform their work each day. Every day, Defendant Aguirre would call the crew leaders and tell them the buildings that their crews would clean the following day. The crew leaders would sometimes pass this information on to Plaintiffs via phone call or text message the night before. But Plaintiffs

4

often wouldn't know where they were going to work until their crew leader picked them up that morning.

23. Plaintiffs did not have a predictable work schedule. The days they worked each week and the hours they worked each day varied substantially—no two weeks were alike.

24. When the company had lots of cleaning work available, Plaintiffs would sometimes work as many as six days a week. When there was less work available, Defendant Aguirre would decide which cleaners would work and which would be taken off the schedule.

25. Plaintiffs' work day could start as early as 4:00 a.m. and could end as late as 10:00 p.m. They typically worked anywhere between 6 and 15 hours per day.

26. The crew leaders recorded the hours that the cleaners worked, including Plaintiffs' hours, using company timesheets. The crew leaders then turned these timesheets over to Defendant Aguirre so that she could get the checks cut.

27. If Plaintiffs had to miss a day, they notified Defendant Aguirre as well as their crew leaders.

**Pay Practices and Pay Problems**

28. Defendants paid Plaintiffs every other Friday. Plaintiffs were paid by check. They would receive the checks at the company office. Defendant Nabi was the one who signed Plaintiffs' paychecks, or they would be signed using a stamp bearing the signature of Reliable Assets' president, Javed Janjua. Either Defendant Nabi or Defendant Aguirre would actually hand the checks out.

29. Plaintiffs received two types of checks: machine-printed checks with a paystub attached, and handwritten checks that did not include paystubs.

30. Plaintiffs' paychecks were often issued under names other than their own names. For example, on at least five occasions, Plaintiff Espinoza received two paychecks in a single pay

5

period—one machine-printed and one handwritten, in differing amounts, with one check made out to "Denia Espinoza" and the other made out to "Elizabeth Dubon." For her part, Plaintiff Mejia received paychecks under the names "Adanalia Mejia," "Ada Nelly Mejia," "Ada Mary Lopez," "Ada Mary Flores," and "Adamarys Flores." Plaintiff Mejia asked Defendant Aguirre to please issue checks under her correct name. Defendant Aguirre responded that if Plaintiff Mejia did not receive the check under the name as it was, she wouldn't get a check at all.

31. Defendants gave Plaintiffs no explanation for their issuing their paychecks under multiple names.

32. Plaintiffs' paychecks did not state the Plaintiffs' pay rates. Plaintiffs' paychecks did not state how many hours they had worked in either of the two individual workweeks that made up the pay period. Plaintiffs' paychecks did not state how many hours they had worked in the two-week pay period as a whole.

33. Plaintiffs were never paid an overtime premium for any of the hours they worked beyond 40 in a given week.

34. Defendants knew or should have known that Plaintiffs were working overtime but failed to compensate them for it.

35. Plaintiff Espinoza worked for Defendants for about 124 weeks within the statute of limitations, or about 62 two-week pay periods. Plaintiff Espinoza has in her possession copies of paychecks from about 26 of these 62 pay periods, or about 41% of her paychecks. Because each pay period comprised two workweeks, Plaintiff Espinoza's 26 checks cover approximately 52 workweeks.

36. Plaintiff Mejia worked for Defendants for about 136 weeks within the three years prior to filing the initial Complaint in this action, or about 68 two-week pay periods. Plaintiff Mejia has in her possession copies of paychecks from about 25 of these 68 pay periods, or about 36% of her paychecks. Because each pay period comprised two workweeks, Plaintiff Mejia's 25 checks cover approximately 50 workweeks.

37. Because Defendants never paid Plaintiffs the legally-required time-and-a-half overtime premium, a Plaintiff can estimate the total hours that she worked on-the-clock in each two-week pay period simply by dividing her gross pay from that pay period by her hourly rate. The Plaintiff can then estimate the average number of hours she worked in each week of the two-week pay period, simply by dividing this number by two.

38. Applying these reasonable inferences, Plaintiff Espinoza estimates that she worked over 40 hours in at least 38 of the 52 workweeks (73%) for which she currently has copies of her paychecks. Plaintiff Mejia estimates that she worked over 40 hours in at least 42 of the 50 workweeks (84%) for which she currently has copies of her paychecks. These estimates of Plaintiffs' hours are based solely on the gross pay that Defendants paid Plaintiffs in each pay period—Plaintiffs' off-the-clock hours (see below) may have resulted in their working overtime in additional weeks.

39. Under the Fair Labor Standards Act and its accompanying regulations, Defendants were required to keep records for at least three years showing, among other things, the hours that Plaintiffs worked each workday, and the total hours they worked each workweek; the regular and overtime wages that Plaintiffs were due; and the regular and overtime wages they were actually paid. *See* 29 C.F.R. § 516.2(a)(5)–(12) (duty to keep records) and § 516.5(a) (records to be kept for three years).

7

40. Plaintiffs' paychecks also failed to compensate them properly for all the hours that they worked in a given workweek.

41. These violations occurred in at least two ways. First, Plaintiffs believe that their crew leaders, Saul and Deisy, regularly under-reported the hours that the cleaning crews (including Plaintiffs) actually worked each day.

42. Second, Plaintiffs believe that Defendant Nabi decided not to pay them even for all of these already-under-reported hours. Plaintiffs believe this because on several occasions they complained to Defendant Aguirre when they noticed that had not been paid for all of their work hours. Defendant Aguirre said that Defendant Nabi had decided that he would not pay the cleaners for all the hours of work they had performed because he believed that the cleaners had taken too long to do the work.

43. Plaintiff Mejia estimates that the company often failed to pay her any wages for between 6 and 10 hours of work that she had performed in a pay period. Plaintiff Espinoza estimates that the company often failed to pay her any wages for between 3 and 5 hours of work that she had performed in a pay period, often during those pay periods where she and her crew had worked a large amount hours.

44. Plaintiff Mejia estimates that her last paycheck failed to compensate her for about 22 hours of work that she had performed in that pay period.

## CLAIM 1: FAIR LABOR STANDARDS ACT

### (Against All Defendants)

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

45. At all times relevant to this action:

   - Plaintiffs were Defendants "employees" within the meaning of 29 U.S.C. § 203(e)(1);

   - Defendants were Plaintiffs' "employers" within the meaning of 29 U.S.C. § 203(d);

   - Defendants "employed" Plaintiffs within the meaning of 29 U.S.C. § 203(g); and

   - Plaintiffs were employed by Defendants in an enterprise engaged in commerce, or were themselves engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

46. At no time during Plaintiffs' employment did Defendants pay them one-and-a-half times their regular rate of pay for any of the hours that they worked beyond 40 in a given week.

47. By failing to pay Plaintiffs an hourly time-and-a-half overtime premium, Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207.

## CLAIM 2: VIRGINIA CONTRACT LAW

### (Against Defendant Reliable Assets, Inc. Only)

### Breach of Contract

48. Each Plaintiff reached an agreement with Defendant Reliable Assets, Inc. whereby Reliable Assets agreed to pay that Plaintiff an hourly wage in exchange for that Plaintiff's performing cleaning work for Reliable Assets.

49. Employment contracts were thus formed under Virginia law.

50. Reliable Assets failed to pay Plaintiffs the promised wage for all the work they performed, breaching the contracts.

51. As a result of Reliable Assets' breach, Plaintiffs suffered damages.

## **RELIEF REQUESTED**

Wherefore, Plaintiffs respectfully request that the Court provide the following relief:

52. Declare that Defendants' FLSA violations were "willful," such that a three-year statute of limitations applies under 29 U.S.C. § 255(a);

53. Award each Plaintiff her actual damages under the FLSA in the amount of all unpaid overtime wages, jointly and severally against all Defendants, in an amount to be proved at trial;

54. Award each Plaintiff an additional amount of liquidated damages equal to her actual damages, pursuant to 29 U.S.C. § 216(b), jointly and severally against all Defendants;

55. Award Plaintiffs their costs and reasonable attorney's fees, as provided by the FLSA, 29 U.S.C. § 216(b), jointly and severally against all Defendants;

56. Award Plaintiffs their contract damages under Virginia law, against Defendant Reliable Assets Inc. only, in an amount to be proved at trial; and

57. Any other relief the Court deems just and proper.

Plaintiffs demand trial by jury.

Respectfully submitted,

_____  Date: October 17, 2016
Nicholas Cooper Marritz (Va. Bar No. 89795)
Simon Y. Sandoval-Moshenberg (Va. Bar No. 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 778-3450
Fax: (703) 778-3454
nicholas@justice4all.org
simon@justice4all.org
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2016, I uploaded the foregoing *First Amended Complaint* to the Court's CM/ECF system, which will cause a Notice of Electronic Filing to be sent to Defendants' counsel of record:

>Nicholas H. Hantzes
>Michael D. Hall
>Hantzes & Associates
>1749 Old Meadow Road, Suite 308
>McLean, Virginia 22102
>(703) 378-5000
>nhantzes@hantzeslaw.com
>mhall@hantzeslaw.com
>*Counsel for Defendants*

/s/ Nicholas Cooper Marritz                                                                 October 17, 2016
Nicholas Cooper Marritz (VSB No. 89795)
**LEGAL AID JUSTICE CENTER**
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Attorney for Plaintiffs*